PAUL H. SACCOCCIO, ESQ.  3600
66-437 Kamehameha Hwy, Ste 209
Haleiwa, HI 96712
Tel: (808) 637-7611
Email: sacco@hawaii.rr.com

STEPHEN M. SHAW, ESQ.  4336
P.O. Box 2353
Honolulu, Hawaii  96804
Tel: (808) 521-0800
Email: shawy001@gmail.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 27 2013

at __ o'clock and __ min __ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TROY KEITH STIMSON, Individually And As Personal Representative Of The Estate Of SHANALYNN MARIE STIMSON, Deceased; MARITES STIMSON, Individually And As Next Friend for GERALD MIRALLES And KENETH STIMSON, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | CIVIL NO. CV13  00429 HG RLP <br> (FTCA-Medical Malpractice) <br><br> COMPLAINT; <br> EXHIBIT A; <br> SUMMONS |

## **COMPLAINT**

Plaintiff TROY KEITH STIMSON, Individually And As Personal

Representative Of The Estate Of SHANALYNN MARIE STIMSON, Deceased;

1

MARITES STIMSON, Individually And As Next Friend for GERALD MIRALLES And KENETH STIMSON, for claims for relief against Defendant UNITED STATES OF AMERICA alleges as follows:

## INTRODUCTION

1.     This Complaint is filed pursuant to the provisions of the Federal Tort Claims Act, Title 28, United States Code §§1346(b), 2671, *et seq.,* against the United States of America arising from the agonizing death of a four year-old child, less than two days after staff at Tripler Army Medical Center Emergency Department (TAMC E.D.) withheld inexpensive, simple tests and antibiotics, which could have saved SHANALYNN MARIE STIMSON's life.

## JURISDICTION

2.     This action arises under the Federal Tort Claims Act, 28 USC §§1346(b), 2671, *et seq.,* ("FTCA"). Plaintiffs were residents of the State of Hawaii at the time of Defendant's negligence, and still currently reside within the State of Hawaii.

## FIRST CLAIM FOR RELIEF –MEDICAL NEGLIGENCE

## PARTIES

3.     Plaintiff TROY KEITH STIMSON ("Troy Stimson") is the father of the Decedent SHANALYNN MARIE STIMSON ("Shanalynn Stimson"). Plaintiff Troy Stimson was appointed the personal representative of the estate of the

2

Decedent on July 19, 2011, by the First Circuit Court, State of Hawaii, Case No. P11-1-0333. A true and correct copy of relevant Letters of Administration is attached as **Exhibit A,** incorporated herein and made a part hereof. Plaintiff sues both as the personal representative and individually.

4.    Plaintiff MARITES STIMSON is the mother of the decedent Shanalynn Stimson, and the wife of Troy Stimson. Marites Stimson sues both as a Next Friend and individually, and has moved ex parte for an order appointing her as Next Friend of her sons, GERALD MIRALLES And KENETH STIMSON.

5.    Plaintiff GERALD MIRALLES is a brother of the Decedent Shanalynn Stimson.

6.    Plaintiff KENETH STIMSON is a brother of the Decedent Shanalynn Stimson.

7.    This is a medical malpractice, personal injury, and wrongful death action to recover damages which arise from wrongful or negligent acts and/or omissions of employees of the Government of the United States of America, including members of the armed forces, acting within the course and scope of their office and/or employment.

8.    At all times relevant herein, Defendant United States of America (hereinafter "Defendant") operated two medical care facilities in the District of

3

Hawaii and a medical transport service. The first facility is known as Tripler Army

Medical Center (hereinafter, "TAMC"), through the Department of the Army.

9.     The second medical care facility is located at Hickam Air Force Base

(HAFB) Clinic, and is known as "HC Pediatric Clinic". Medical transport in this

case was via HAFB Civil Engineering Squadron (CES).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10.     Plaintiffs mailed their claims against the United States of America for

personal injury on December 9, 2010, and March 16, 2012, within the statutory

period prescribed by the FTCA. The United States of America acknowledged

receipt of Plaintiffs' FTCA claim forms; and on March 5, 2013, took final

administrative action on Plaintiffs' claims. Therefore, this suit is timely filed

pursuant to the provisions of the FTCA. Plaintiffs have exhausted all relevant

administrative procedures.

**FACTUAL AND OTHER ALLEGATIONS**

11.     At all relevant times herein, the health-care providers employed by

Defendant United States, as hereinafter identified, had a physician-patient, nurse-

patient, or other provider-patient relationship with Shanalynn Stimson. Further,

said health-care providers hereinafter identified assessed Shanalynn, and delivered

or purported to deliver, medical treatment, evaluation, diagnosis, transport and/or

care, as employees of Defendant United States of America. Said providers and

Defendant accordingly owed a duty to Plaintiff to properly and competently diagnose, assess, treat, monitor, transport, and follow-up, with respect to health care provided to Shanalynn. Further, the providers employed by Defendant, who assessed, evaluated, treated, monitored, or provided any service to Shanalynn owed Plaintiffs a duty to have the knowledge and skill ordinarily used by health care providers practicing in the same field under similar circumstances.

12.   On April 25, 2010 at about 4:45 a.m., four year-old Shanalynn Stimson, presented to the TAMC Emergency Department ("E.D"), with her father, Plaintiff Troy Stimson, a history including a productive cough for 2 – 3 days; and, beginning about April 24, 2010, fever reaching 104°, sinus/nasal congestion, breathing difficulties, soreness, body-aches, stiff neck, red throat, nausea, inability to retain fluids or food, vomiting, loss of appetite, difficulty with urination, chills, talking in sleep, listlessness (feeling "mopey"), fatigue, and other symptoms.

13.   TAMC E.D. records indicate that James Corliss RN, performed triage at about 5:05 a.m. on April 25, 2010, at TAMC E.D. Blood pressure measurement was deferred. Four year-old Shanalynn Stimson's heart rate was charted at "155 regular". Nurse Corliss recorded a temperature of "99.1 oral". Another TAMC E.D. Nurse Todd Morris' physical assessment recorded vomiting (per father), dry hot skin, and pink mucous membranes. At 6:30 a.m. Nurse Morris took no blood pressure, recorded Shanalynn's temperature at "103.9 oral", and heart rate at "158

regular". Her respiratory rate was charted at 28, and her 02 saturation was 98. No "Stop Sepsis" or related protocol was administered; nor were there concerns about tachycardia and/or fluid in the lungs.

14.     TAMC E.D. nurses James Corliss, and Todd Morris evaluated Shanalynn Stimson. TAMC E.D. physicians Bradley Pearson and Waffen Douglas signed documents, but did not examine Shanalynn or provide sufficient, if any, medical decision-making. One of the providers examined Shanalynn's throat and stated: "there's a little bit of redness." He added: "could be flu or cold. We could give antibiotics. If it's a cold it won't work, but antibiotics won't hurt."

15.     Defendant's employees failed to properly consider available diagnoses and/or symptoms presented, and/or available treatment. Instead, Defendant's employees minimized the symptoms as "vomiting and fever", and assigned the following international disease classifications (diagnosis codes) to Shanalynn: 787.03 ('vomiting alone") and 780.60 ("fever, unspecified"). Before determining the diagnoses, said physicians and nurses failed to (1) obtain tests other than a urinalysis, (2) consult with a TAMC pediatrician, and/or Shanalynn's primary care physician, or (3) review Shanalynn's prior history at TAMC of respiratory infections.

16.    Shanalynn was discharged from TAMC ED at about 8:15 a.m., on April 25, 2010 by Nurse Todd Morris and/or Dr. Pearson. She was prescribed Tylenol and Motrin. Dr. Pearson's follow-up instruction was as follows:

> "call your doctor in 3 days for results of tests. If unable to obtain follow-up, call the emergency department. Follow up with your doctor in three days as needed... Understanding of the discharge instructions verbalized by parent."

17.    On April 27, 2010, Shanalynn was brought by HAFB (CES) Ambulance back to TAMC E.D., where she passed away.

18.    Autopsy revealed that four-year old Shanalynn Stimson suffered from pneumonia with empyema and streptococcus pyogenes, which caused her death. Her right chest cavity cantained 400 ml of opaque brown fluid.

19.    Shanalynn's death, less than forty-eight hours from her TAMC emergency department visit, more likely than not, would have been prevented by the care which was withheld by Defendant, including without limit; a consult with a pediatrician, antibiotic prophylaxis, simple tests - rapid strep tests on the throat, tests for rapid detection of streptococcus, including streptococcus pyogenes in pediatric patients, overnight throat culture, CBC, blood tests, x-rays, fluid challenge with observation, and/or sepsis workup, strep culture etc. At the time Shanalynn returned to TAMC emergency room, she remained without a diagnosis which would have saved her life.

20.    In addition to the foregoing withheld care, Shanalynn's death could more likely than not have been prevented by Defendant had its TAMC E.D. employees (1) contacted Shanalynn's primary care physician, (2) considered her prior history of acute upper respiratory infection, (3) required a recheck appointment within a specified time period, (4) employed sufficient medical decision-making by physician including Dr. Pearson and Dr. Waffen, (5) adequately responded to the complaints and/or symptoms of Shanalynn which were known or should have been known by Defendant, by and through its agents, servants, and employees, (6) employed differential diagnoses, (7) obtained informed consent from Shanalynn and her parents, (8) utilized the nearby TAMC pediatrician.

21.    Defendant, by and through its employees, owed a duty to Plaintiffs to have the knowledge and skill ordinarily possessed and to exercise the care and skill ordinarily used by health care providers, hospitals, emergency departments, clinics, ambulance services, and hospital emergency departments practicing in the same field under similar circumstances. In negligently examining, evaluating, testing, diagnosing, and caring for Shanalynn Stimson, as aforesaid, and withholding care and treatment, Defendant breached the foregoing standard of care owed to Plaintiff Shanalynn Stimson.

22.     As a direct and legal and/or proximate cause of the carelessness, negligence, actions, omissions, and breaches of the duties of care as aforesaid, Shanalynn Stimson died on April 27, 2010.

23.     As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Shanalynn Stimson, suffered great physical pain, suffering, discomfort, emotional injuries and distress, and mental anguish; and her Estate is entitled to recover damages therefor as provided in Hawaii Revised Statutes (hereinafter "HRS") §663-7.

24.     As a further direct and legal and/or proximate cause of the carelessness, negligence, actions, and omissions of Defendant as aforesaid, Shanalynn suffered permanent loss of enjoyment of life and the inability to pursue normal activities of life; and her Estate is entitled to recover damages therefore as provided in HRS §663-7.

25.     As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of Defendant as aforesaid, Plaintiffs have incurred medical and miscellaneous expenses in amounts not presently ascertainable, and Decedent's Estate has been compelled to and did make and incur various costs and expenses for medical, funeral and burial expenses, in

such amounts as shall be shown at the time of trial; and Decedent's Estate is thereby entitled to recover damages as provided in HRS §663-3.

26.   As a further direct, legal and/or proximate cause of the carelessness, negligence, actions, and omissions of defendants as aforesaid, Shanalynn Stimson's Estate has incurred loss of future excess earnings; and Decedent's Estate is thereby entitled to recover damages as provided in HRS §663-8.

27.   As a further direct and legal and/or proximate cause of the carelessness, negligence, actions and omissions of defendants as aforesaid, Plaintiffs Troy and Marites Stimson, individually, as the surviving parents of Shanalynn, and Plaintiffs Gerald Miralles and Keneth Stimson, Shanalynn's surviving brothers, have suffered, and will continue to suffer in the future, loss of love and affection, society, companionship, comfort, protection, filial care and attention, advice, counsel, guidance and other benefits of a child and sibling; pecuniary injury, and loss of financial support in the future,  respectively, for which said Plaintiffs are entitled to recover damages as provided in HRS §663-3; and in addition, since they have suffered and continue to suffer serious mental anguish and emotional distress, Plaintiffs are also entitled to recover damages therefor.

28.   As a further direct legal, and proximate result of the tortious conduct of the Defendant, Plaintiffs have sustained other special and general damages, in the amounts to be shown by proof at the time of trial.

## SECOND CLAIM – MEDICAL NEGLIGENCE

29.   Plaintiffs reallege the foregoing allegations, and incorporate them herein.

30.   In the morning April 26, 2010, Plaintiff Troy Stimson called for Shanalynn's primary care physician at HC Pediatric Clinic. Cynthia R. Silva RN recorded that Shanalynn was in the E.D. the day before due to fevers up to 104, with vomiting, and that she still has fevers up to 103, with coughing fits causing Shanalynn to vomit. The chart reflects that at all times HC Pediatric Clinic had access to TAMC E.D. medical records.

31.   Plaintiff Troy Stimson attempted to get an immediate appointment, but the nurse could not schedule a visit until April 27th, the next day. According to the nurse, she could hear Shanalynn's productive "moist" cough on the phone. At all times, HC Pediatric Clinic was aware of Shanalynn's history of respiratory infection, before her 4-25-10 visit to TAMC E.D.

32.   Later, about 11:30 p.m., Shanalynn had trouble breathing and Troy noticed that her heartbeat felt "fast". He called for the primary care physician (PCP) at HC Pediatric Clinic. The "on call" nurse did not route the call to

Shanalynn's PCP, and instead opined that the parents were doing "everything right". The nurse added: "if you feel you need to take her to Tripler it's your call."

33.    In addition to the foregoing, Shanalynn's death the next day more likely than not would have been prevented by the care HC Pediatric Clinic withheld from this child, including, without limit, an "in person" morning appointment to ascertain the child's appearance of illness, provide antibiotic prohylaxis, and an immediate transfer by ambulance to TAMC E.D. with a pediatrician in attendance. The Clinic should have conducted blood tests, a "stop sepsis" protocol, and adequate monitoring of the Clinic's patient, from the first call by Mr. Stimson.

## THIRD CLAIM – MEDICAL NEGLIGENCE

34.    Plaintiffs reallege the foregoing allegations, and incorporate them herein.

35.    Early in the morning of April 27, 2010, Plaintiff Troy Stimson called for an ambulance. After an unreasonable delay, HAFB Civil Engineering Squad (CES) arrived to transport Shanalynn to TAMC E.D. Ambulance staff had difficulties during transport, including the heart-rate monitor, and pre-hospital CPR.

## FOURTH CLAIM – MEDICAL NEGLIGENCE

36.   Plaintiffs reallege the foregoing allegations, and incorporate them herein.

37.   Again, on April 27, 2010 at about 3:15 a.m., Shanalynn was admitted to the TAMC E.D. She died at 3:56 a.m.

38.   Defendant's employees were limited by the failure to diagnose Shanalynn's condition on April 25, 2010, including strep, pneumonia and fluid building up in her lungs. Her death more likely than not would have been prevented by the care which was withheld as alleged, together with the actual measures delivered and/or omitted on April 27, 2010, including the detachment of Shanalynn's oxygen line from the valve on the E.D. wall, and lack of resuscitation protocols consistent with the fluid buildup in Shanalynn's lungs.

## FIFTH CLAIM – INFORMED CONSENT

39.   Plaintiffs reallege the foregoing allegations, and incorporate them herein.

40.   Defendant by its employee providers and physicians owed a duty to Plaintiff Shanalynn Stimson and her parents to communicate the information a reasonable patient needs from a physician to allow Plaintiffs to make informed and intelligent decisions regarding the proposed treatment by TAMC E.D. staff on April 25, 2010, and by HC Clinic staff on April 26, 2010.

41.     Defendant's employees breached the aforesaid duty and caused injury, death, and damages as aforesaid by failing to disclose the following to Plaintiff Shanalynn Stimson and her parents Marites Stimson and Troy Stimson:

     A.     The condition to be treated;

     B.     Description of the proposed treatment – Motrin, Tylenol;

     C.     Intended and anticipated results of the proposed treatment;

     D.     Recognized alternative treatments or procedures (rapid – strep test, CBC, blood tests, x-rays, antibiotics prophylaxis etc.), including the option of not providing these procedures;

     E.     Recognized material risks of serious complications or mortality associated with:

        (1)     The proposed treatment or procedure; and

        (2)     Recognized alternative treatments or procedures; and

        (3)     Not undergoing any treatment or procedure, and

     F.     The recognized benefits of the recognized alternative treatments or procedures.

42.     A reasonable person in Plaintiffs' circumstance would not have consented to the proposed treatment had the patient and her parents received the required discloses on April 25, 2010 and April 26, 2010.

## SIXTH CLAIM – RESPONDENT SUPERIOR

43.    Plaintiffs reallege the foregoing allegations, and incorporate them herein.

44.    At all times relevant herein, the employees, agents, servants and representatives of the TAMC E.D. who examined, diagnosed, cared for, and treated Shanalynn Stimson were acting within the course and scope of their employment, agency and service with the aforesaid providers and therefore with Defendant; and, therefore, Defendant is liable to Plaintiffs for the tortious conduct of the above-mentioned employees, agents, servants and representatives as set forth in this Complaint under the doctrine of respondeat superior and/or agency principles.

## SEVENTH CLAIM FOR RELIEF - NIED

45.    Plaintiffs reallege the foregoing allegations, and incorporate them herein.

46.    At all times, Defendant owed a duty to refrain from causing Plaintiffs' serious emotional distress.

47.    By doing those acts, and by failing to act as aforesaid and fatally injuring Decedent, Defendant breached the duty to refrain from negligent infliction of serious emotional distress.

48.     The conduct of Defendant and Defendant's employees constitutes negligent infliction of emotional distress.

49.     As a legal and proximate result of Defendant's negligence, Plaintiffs have sustained injuries and damages and are entitled to compensation for medical expenses, other out-of-pocket loss, pain and suffering, severe emotional distress and mental anguish, and other special and general damages allowed by law.

## EIGHTH CLAIM FOR BREACH OF WARRANTY

50.     Plaintiffs reallege the foregoing allegations, and incorporate them herein.

51.     At all times relevant herein, the TAMC E.D., HC Pediatric Clinic, and HAFB Civil Engineering Squadron and their employees, agents, servants and representatives, did hold themselves and their health care provider employees, agents, servants and representatives out to members of the general public and to Plaintiffs as possessing that degree of care and skill ordinarily possessed and exercised by like health care providers, employees, agents, servants and representatives.

52.     At all times relevant herein, the providers impliedly and/or expressly warranted to Plaintiffs that it and its employees, servants, agents and representatives would provide competent care and appropriate treatments and/or services.

53.     The providers breached their warranties to Plaintiffs.

54.     As a direct and legal and/or proximate result of the providers' breaches of warranties, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.     For general and special damages in amounts that will be proven at trial; and Plaintiffs further state that the amount of their damages as asserted herein falls within the jurisdictional requirements of this Court;

b.     Interest as allowed by law;

c.     Plaintiffs' costs of suit and attorneys' fees; and

d.     Such other and further relief as this Court deems just and proper.

DATED:     Honolulu, Hawaii, August 27, 2013.

/s/ STEPHEN M. SHAW

PAUL H. SACCOCCIO
STEPHEN M. SHAW
Attorneys for Plaintiffs

17